913 A.2d 814 (2006)
389 N.J. Super. 462
ALL MODES TRANSPORT, INC. d/b/a AMS Logistics, Plaintiff-Respondent,
v.
William G. HECKSTEDEN, Deborah A. Hecksteden a/k/a Deborah Sieczkowski, and Vendor Management Integrity, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2006.
Decided December 27, 2006.
*815 Joseph M. Cerra, Rochelle Park, argued the cause for appellants (Forman Holt & Eliades, attorneys; Mr. Cerra, on the brief).
Charles R. Cohen, Newark, argued the cause for respondent.
Before Judges SKILLMAN, LISA and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The trial court interrupted the cross-examination of the primary defendant in this case to warn him that continuation of his testimony could result in the court referring the matter to the appropriate prosecuting authority and suggested that defendants give further consideration to settlement. Following receipt of this warning, defendants agreed to settle the case for a substantial amount of money. Shortly thereafter, defendants moved to vacate the settlement on the ground that their agreement had been coerced by the threat of criminal prosecution. Although the trial court expressed the opinion that its warning had enabled plaintiff to extract a settlement that exceeded what could have been obtained from a jury verdict, the court nevertheless ruled that defendants' agreement to the settlement had not been coerced. We conclude that the trial court erred in interrupting the primary defendant's cross-examination to warn him that continuation of his testimony could result in the court referring the matter to the appropriate prosecuting authority. We also conclude that the trial court took too restrictive a view of the issue of voluntariness in denying defendants' motion to vacate the settlement. Therefore, we reverse the denial and remand to the trial court.
Defendant William Hecksteden was employed by plaintiff All Modes Transport as its chief operating officer under an employment contract that required him to devote his entire working time and best efforts to the performance of the duties of his employment. After Hecksteden resigned, All Modes brought this action alleging that Hecksteden during the course of his employment by All Modes had secretly formed and operated defendant Vendor Management Integrity (VMI), which conducted a business that competed with All Modes. All Modes asserted claims against Hecksteden for breach of contract, fraud, breach of fiduciary duty and conspiracy. All Modes' complaint also *816 named VMI and Hecksteden's wife Deborah, who allegedly participated with him in operating VMI, as defendants.
At a settlement conference, All Modes' counsel advised the court and Hecksteden's counsel that he planned to cross-examine Hecksteden with documentary evidence that would show Hecksteden had claimed deductions on his tax returns for VMI business expenses that were identical to expenses for which he had received reimbursement from All Modes. All Modes' counsel showed Hecksteden's counsel the documents he planned to use in this cross-examination and told him "his client was taking an enormous risk" in failing to settle. However, no settlement was reached before trial.
After All Modes completed its case, Hecksteden testified for the defense. On cross-examination, All Modes' counsel began questioning Hecksteden about the expense vouchers he had submitted to All Modes and the expenses he had claimed as deductions on his tax returns in connection with VMI's business operations, to show that All Modes had reimbursed Hecksteden for the same expenses.
Shortly after the beginning of this cross-examination, the trial court declared a recess and asked to see counsel in chambers. In a letter submitted to this court pursuant to Rule 2:5-1(b), the trial court explained the reason for declaring this recess and what occurred in chambers:
At the beginning of the cross-examination of defendant William Hecksteden, the court noticed a stack of papers approximately 12 to 20 inches high on plaintiff's counsel table. In using the first one or two of those documents on cross-examination of defendant William Hecksteden, plaintiff's counsel made it apparent that Mr. Hecksteden had received reimbursement for approximately $1,800 worth of expenses from his employer and had deducted those same expenses on the tax return of his "side company" [VMI] as business expenses. Sensing that the remaining foot of documents related to further and similar transgressions, the court asked counsel to confer in chambers and gave the jury a break.
In chambers, the court told counsel that it did not consider the testimony already rendered as substantial enough to warrant a Sheridan[1] letter. The court did indicate, however, that counsel should confer and that if the remaining documents and further testimony were to reveal similar, and more material transgressions, counsel should be aware that the court was going to write the Sheridan letter: if defendants' counsel was assured that further testimony would not so reveal, he could proceed on that basis. If, however, the former scenario was to be the operative scenario, the court suggested that counsel attempt to settle the matter, indicating to them that there was not a single doubt in the court's mind that a Sheridan letter would follow if material violations of federal or state tax law were testified to by Mr. Hecksteden. Plaintiff's counsel had in his briefcase a copy of the Sheridan case, which he gave to defense counsel.
The court told counsel to discuss the case for ten minutes and advise as to where they were heading. Counsel had been out of the courtroom for approximately 45 minutes, according to the bench report, when they informed chambers *817 that they had settled the matter and they wished to put it on the record.
The settlement agreed to during the recess required Hecksteden to pay All Modes $600,000.
The trial court asked Hecksteden the standard set of questions regarding the voluntariness of his agreement to the settlement. The agreement was subsequently memorialized by a written stipulation of settlement signed by both parties.
Several weeks after execution of this stipulation, defendants filed a motion to vacate the settlement. In support of this motion, Hecksteden submitted a certification alleging that his counsel had reported during the in-chambers settlement conference that "the Judge was concerned that if I proceeded with the trial she would be obligated to contact the federal authorities to investigate me," and that it was his "understanding any such investigation could have criminal implications." Hecksteden also stated:
My attorney explained the Judge stated that "If I said three more sentences she would be obligated to contact the federal authorities[.]" I was then placed in an untenable position where I could not explain how my accountant prepared my return and also could not defend myself without the Judge contacting the federal authorities.
Hecksteden further alleged that the court only granted a "ten minute recess to discuss possible settlement," and that he was not able to contact his accountant or a criminal attorney during this brief period to discuss the consequences of the court referring the matter for a tax fraud investigation. Hecksteden did speak to a tax attorney during the recess, who advised him that "if there were irregularities . . . there certainly could be civil and criminal implications." Based on these circumstances, Hecksteden claimed that he had agreed to the settlement "under extreme duress."
After Hecksteden failed to pay the $600,000 within the time provided under the stipulation, All Modes filed a cross-motion to enforce the settlement.
At oral argument on the cross-motions, the trial court expressed the opinion that plaintiff "really had the defendants over a barrel[,]" after the court advised counsel that the continuation of Hecksteden's cross-examination might require the court to report evidence of income tax fraud to the appropriate authorities, and as a result, plaintiffs were able to "extract[] . . . a settlement that they never would have been able to get by means of a jury verdict." Nevertheless, the trial court concluded that defendants could not vacate the settlement on the ground that Hecksteden was coerced into the settlement by the threat of the court referring the matter for a tax fraud investigation. The court indicated that it would vacate the settlement only if Hecksteden could show that he did not enter into the settlement "knowingly" because he had misconceived the risk that he could be prosecuted for tax fraud.
The trial court explained the rationale for this ruling in the letter submitted to this court pursuant to Rule 2:5-1(b):
[T]he court determined to give the defendants an opportunity to demonstrate that they had not entered into the settlement knowing and voluntarily because they had not had sufficient time to contact their tax accountant, who could have confirmed that they were without fault, an allegation made by the defendants on the motion.
. . . [I]n order for a contact with their tax accountant to have made any difference, the tax accountant would have had to certify that any expenses that had *818 been reimbursed by the employer and deducted as expenses for the "side company" [VMI] were discounted off of the "side company" tax return in a subsequent IRS audit, because they had been listed erroneously. Were that to have been the case, defendants would not have committed tax fraud because reimbursed expenses would not, in the end, have been deducted knowingly.
Based on this view, the court scheduled a hearing to determine whether Hecksteden's agreement to enter into the settlement was "unknowing" and, therefore, "involuntary."
Hecksteden and his wife Deborah testified at this hearing. However, they were unable to present testimony by their tax accountant to support Hecksteden's claim that he had not committed tax fraud. The trial court concluded that in the absence of such testimony, defendants were not entitled to an order vacating the settlement:
[T]he end result was that, had a new trial been granted, defendant Hecksteden's cross-examination would inevitably have revealed under oath the same tax problem that prompted the recess of the original trial. There was thus nothing that the tax accountant knew that Mr. Hecksteden did not know; and the settlement was entered into knowingly and voluntarily.
After the denial of defendants' motion to vacate the settlement, All Modes filed a motion for an award of the attorney's fees and costs that it had incurred in opposing the motion. The trial court concluded that "there was no reason in law or equity for [defendants'] pursuit of the motion to vacate the settlement[.]" Accordingly, the court awarded All Modes $78,500 for the attorney's fees and costs it had incurred in opposing the motion.
On appeal, defendants argue that the trial court erred in denying their motion to vacate the settlement. Defendants also argue that even if Hecksteden knowingly and voluntarily consented to the settlement, it is not binding upon his wife Deborah because she did not consent and Hecksteden did not have authority to agree to the settlement on her behalf. In addition, defendants argue that the court erred in awarding All Modes attorney's fees and costs.
We conclude that the trial court erred in interrupting Hecksteden's cross-examination to warn him, through counsel, that the court would be compelled to refer the matter to the appropriate prosecuting authorities if the continuation of his cross-examination revealed substantial evidence of tax fraud and suggesting that the parties give further consideration to settlement. We also conclude that the court took too restrictive a view of the issue of voluntariness in ruling that defendants would be entitled to vacate the settlement only if they could show Hecksteden did not understand the facts relevant to his exposure to prosecution for tax fraud. Therefore, we reverse the denial of defendants' motion to vacate the settlement and remand to the trial court for reconsideration of the issue of voluntariness. This disposition makes it unnecessary to consider whether Hecksteden's consent to the settlement was binding upon his wife. We reverse the award of the attorney's fees and costs All Modes incurred in opposing defendants' motion.
It is the public policy of this State to encourage the settlement of litigation. Ziegelheim v. Apollo, 128 N.J. 250, 263, 607 A.2d 1298 (1992). Moreover, "[c]ourts play an important role in effecting settlement." Peskin v. Peskin, 271 N.J.Super. 261, 275, 638 A.2d 849 (App. Div.), certif. denied, 137 N.J. 165, 644 A.2d 613 (1994). "However, that role must always *819 be exercised appropriately and with full recognition that the court must remain fair and impartial[.]" Ibid. Consequently, "courts should never work to coerce or compel a litigant to make a settlement." Ibid. In particular, "[c]ourts should not use the threat of sanctions to force the settlement of a case." Id. at 276, 638 A.2d 849. And "[i]f a settlement agreement is achieved through coercion, . . . undue pressure, or unseemly conduct," a court may set it aside. Ibid.
The record does not indicate that the trial court's purpose in interrupting Hecksteden's cross-examination to warn him that if his testimony revealed substantial evidence of tax fraud, the court would refer the matter to the appropriate prosecuting authorities, was to coerce him to settle the case. Instead, the court apparently conceived that it had an obligation to warn Hecksteden of the possible penal consequences of his anticipated testimony. However, even if the court's purpose in issuing this warning was to protect Hecksteden from self-incrimination, the determination whether the settlement was coerced does not turn on the court's purpose in issuing the warning but rather its effect on defendants' decision to enter into the settlement. See id. at 278, 638 A.2d 849.
Furthermore, the trial court's apparent view that it had an obligation to warn Hecksteden that continuation of his cross-examination could result in him incriminating himself was mistaken. A trial court has no obligation to warn even a potential witness who is not represented by counsel that his or her testimony may be self-incriminating. See State v. Feaster, 184 N.J. 235, 250-52, 877 A.2d 229 (2005); State v. Jamison, 64 N.J. 363, 374-77, 316 A.2d 439 (1974); State v. Vassos, 237 N.J.Super. 585, 588-94, 568 A.2d 583 (App. Div.1990). Instead, the proper judicial course "ordinarily will be to leave the matter of suspicion of criminality attendant upon the actions of the prospective witness . . . for such attention at the conclusion of the case as [may be] warranted." Feaster, supra, 184 N.J. at 252, 877 A.2d 229 (quoting Jamison, supra, 64 N.J. at 376, 316 A.2d 439).
In a criminal case, the court generally may assume that the prosecutor will undertake the responsibility of determining whether it is appropriate to initiate criminal proceedings against a witness. See ibid. In a civil case, however, the prosecutor is not a participant in the trial, and therefore, the trial court must undertake the responsibility of determining whether a witness's testimony should be referred to the appropriate prosecuting authority.
It is even clearer in this case than in a case involving a non-party witness who is not represented by counsel that the trial court had no obligation to interrupt Hecksteden's cross-examination to warn him that his testimony could be self-incriminating. Hecksteden was represented by counsel. It was the responsibility of Hecksteden's counsel, not the trial court, to advise Hecksteden concerning his legal rights and potential liabilities, including the possibility his testimony could be self-incriminating and that the court or another party would refer that testimony to the attention of the Internal Revenue Service or the United States Attorney. In fact, as the trial court was aware, Hecksteden's counsel had discussed the risk of such a referral with him before the trial began.
The trial court's error in interrupting Hecksteden's cross-examination to warn him that it could refer any self-incriminating testimony to the appropriate prosecuting authorities was compounded by the juxtaposition of this warning with the suggestion that the parties give further consideration to settlement. Whatever the *820 court's purpose may have been in giving this warning, the court's statement that Hecksteden's testimony up to that point had not been "substantial enough" to warrant a criminal referral but that the court would make such a referral if his "further testimony were to reveal similar, and more material transgressions," had to have exerted substantial pressure upon Hecksteden to settle the case in order to avoid criminal prosecution.
Rule of Professional Conduct 3.4(g) provides that "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges to obtain an improper advantage in a civil matter." Therefore, if All Modes' counsel had told defendants' counsel that he would refer Hecksteden's trial testimony to the appropriate prosecuting authority unless defendants acceded to All Modes' settlement demand, such a threat would have violated this Rule. Although the trial court's warning to Hecksteden did not violate any ethical rule, it gave All Modes the same opportunity "to obtain an improper advantage in a civil matter" from a "threat[] to present criminal charges" that it would have obtained if its own attorney had made the threat. In fact, such a threat may be even more coercive when the trial court is the source.[2]
Although the trial court indicated that its warning to Hecksteden enabled All Modes to extract "a settlement that [it] never would have been able to get by means of a jury verdict[,]" the court concluded that this circumstance was not a sufficient ground for setting aside the settlement. Consequently, even though the court ordered a hearing on defendants' motion to vacate the settlement, it indicated that the only issue on which evidence could be presented was whether Hecksteden's tax accountant would have been able, if he had been available at the time of the settlement, to assure Hecksteden that the deductions on his tax returns were proper and therefore he would not be exposed to prosecution for tax fraud if the trial continued. In that event, in the court's view, Hecksteden's agreement to the settlement would not have been "knowing."
In thus limiting the evidence that could be presented in support of defendants' motion, the trial court took too restrictive a view of the issue of voluntariness. The issue before the court was not whether Hecksteden was guilty of or faced a substantial risk of prosecution for tax fraud. Instead, the issue should have been whether Hecksteden entered *821 into the settlement agreement under duress because he feared that a continuation of the trial would result in the trial court referring his testimony to the appropriate prosecuting authority. The court's apparent view that Hecksteden committed tax fraud did not provide a basis for rejecting his claim that his consent to the settlement was coerced. To the contrary, it is reasonable to conclude that the court's warning to Hecksteden would have been even more coercive if Hecksteden knew he was guilty of tax fraud. See Restatement (Second) of Contracts § 176 cmt. c (1981) (noting that "[t]he guilt or innocence of the person whose prosecution is threatened is immaterial in determining whether the threat is improper, although it may be easier to show that the threat actually induced assent in the case of guilt"). Therefore, the case must be remanded to the trial court to determine, based on a complete evidentiary record, whether defendants' consent to the settlement was coerced by the court's warning that continuation of Hecksteden's cross-examination could result in a referral to the appropriate prosecuting authority.
Because we reverse the order denying defendants' motion to vacate the settlement agreement, we also reverse the order awarding All Modes the attorney's fees and costs it incurred in opposing the motion.[3]
Accordingly, we reverse the orders denying defendants' motion to vacate the settlement and awarding All Modes counsel fees and costs and remand to the trial court for further proceedings in conformity with this opinion.
NOTES
[1] Sheridan v. Sheridan, 247 N.J.Super. 552, 563-66, 589 A.2d 1067 (Ch.Div. 1990) (holding that judges have duty to report intentional misrepresentation of income to the appropriate authorities).
[2] We have no occasion in deciding this appeal to consider the circumstances under which a trial court should refer possible criminality revealed by trial testimony to the prosecutor. We only hold that a court has no obligation to interrupt a party's testimony to issue a warning that it may be self-incriminating and that a court should not inform a party that his or her testimony may be referred to the prosecutor if the case is not settled. We note, however, that advisory opinions issued by judicial ethics committees in other jurisdictions indicate that the determination whether to refer incriminating testimony to the prosecutor is committed to the trial court's sound discretion, which should be exercised in light of the nature of the alleged crime, the quality of the evidence and other relevant circumstances. See, e.g., Arizona Judicial Ethics Comm., Op. 15 (1992); Maryland Judicial Ethics Comm., Advisory Op. 07 (2004); New York Advisory Comm. on Judicial Ethics, Joint Op. 85, 103 (1988); see generally, Cynthia Gray, A Judge's Obligation to Report Criminal Activity, 18 No. 3 Jud. Conduct Rep. 3 (1996). Pertinent to the issue presented by this appeal, the New York Advisory Committee on Judicial Ethics cautioned that a court's authority to report evidence of criminal conduct to the prosecutor should not be exercised in a manner that would "encourage the threat of possible criminal proceedings as a means of pressure, for settlement purposes or otherwise, by one litigant against another." New York Advisory Comm. on Judicial Ethics, Joint Op. 85, 103 (1988).
[3] We question whether N.J.S.A. 2A:15-59.1(a)(1) would have provided authority for an award of counsel fees and costs even if defendants' motion to vacate the settlement had been frivolous. See Lewis v. Lewis, 132 N.J. 541, 545, 626 A.2d 422 (1993).