999 A.2d 471 (2010)
414 N.J. Super. 423
STATE of New Jersey DIVISION OF YOUTH AND FAMILY SERVICES, Plaintiff-Respondent,
v.
T.G., Defendant-Appellant.
In the Matter of the Guardianship of R.V., Minor.
DOCKET NO. A-6187-08T4.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 2010.
Decided July 21, 2010.
*473 Howard Danzig, Designated Counsel, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Danzig, on the brief).
Jane Blank, Deputy Attorney General, argued the cause for respondent (Paula T. Dow, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Blank, on the brief).
Phyllis G. Warren, Assistant Deputy Public Defender, argued the cause for minor (Yvonne Smith Segars, Public Defender, Law Guardian, attorney; Ms. Warren, on the brief).
Before Judges PARRILLO, LIHOTZ & ASHRAFI.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Defendant T.G. appeals from a July 1, 2009 Family Part order denying her motion to set aside her voluntary surrender of parental rights in respect of her child, R.V., which resulted in a judgment awarding guardianship to plaintiff New Jersey Division of Youth and Family Services (DYFS or the Division) to secure the child's adoption. Defendant argues the court erred in denying her motion, filed pursuant to Rule 4:50-1. She maintains the judgment must be vacated as DYFS failed to comply with a material condition of the surrender agreement. Defendant *474 additionally contends the court violated her rights of procedural due process and against self-incrimination. Following our review of these arguments in light of the record and the applicable law, we affirm.
Defendant gave birth to R.V. on May 1, 1997. R.V.'s father is R.J.V. The Division became involved with the family on May 30, 1997, as both defendant and R.J.V. suffered from alcohol dependence. R.J.V. voluntarily surrendered his parental rights on November 7, 2008, and is not a party to this appeal. We focus our review on defendant's surrender and her motion to vacate the judgment of guardianship.
After years of unsuccessful efforts to assist defendant's achievement of sobriety, the Division filed a complaint for guardianship on December 8, 2005. The complaint was amended on July 28, 2006, to seek kinship legal guardianship (KLG) in favor of R.V.'s grandmother, H.L. On September 1, 2006, defendant consented to entry of a KLG judgment. Then, on July 6, 2007, she moved to amend or vacate that judgment. Thereafter, the Division commenced a review of the family's circumstances, inquiring whether reunification was in the child's best interests.
The Division's investigation revealed defendant and R.J.V. continued their substance abuse and H.L. allowed defendant to reside in her home, ignoring the court's orders precluding defendant from unsupervised contact with the child. The Division reopened the protective services litigation and obtained an order of care and supervision of R.V.
Pending further review, the court allowed R.V. to remain with H.L. and required all contact between defendant and R.V. be supervised by the Division. Conflict between defendant and H.L. heightened, and H.L. informed DYFS she was unable to protect R.V. from defendant. On March 28, 2008, the Division exercised an emergency removal of R.V. The court vacated the KLG judgment and granted custody, care, and supervision of the child to the Division.
On August 21, 2008, the Division filed a second guardianship complaint, seeking termination of defendant's and R.J.V.'s parental rights. R.J.V. consented to a general surrender of his parental rights, while a trial to sever defendant's parental rights was scheduled for March 30 and 31, 2009.
On the first trial date, defendant, represented by counsel, appeared and agreed to voluntarily surrender her parental rights. During the ensuing hearing, defendant testified she knew the trial would begin that morning and acknowledged she had consulted with her attorney, who was prepared to proceed. Defendant stated she understood the nature of a general surrender, specifically that her decision would end her parental rights to R.V. and that all visitation would cease except as allowed at the discretion of the child's caretakers. Additionally, defendant waived her right to trial and the right to participate in three counseling sessions prior to the effectuation of her decision. She testified she had freely and voluntarily entered into her decision, was neither coerced nor threatened, and was free of the influence of drugs or alcohol. Upon cross-examination by the Division's counsel and the Law Guardian, defendant reiterated she had had enough time to think about her decision, had completely discussed the matter with her attorney, and understood the Division was ready to proceed to trial.
The court then conducted this inquiry:
[THE COURT] Do you understand everything that's going on today?
[DEFENDANT] Yes.
Q. Do you have any questions of ... the [c]ourt concerning these proceedings?

*475 A. No.
Q. Do you have any of DYFS, of the Law Guardian, or [defense counsel], or anyone from DYFS concerning the proceedings?
A. No.
Q. All right. And you understand you're entering into a general surrender of your rights to ... the child?
A. Yes.
Q. Do you do so freely and voluntarily?
A. Yes.
Q. Are you under any duress or coercion to do so?
A. No.
Q. And you understand that after today you have no further rights to the child?
A. Yes.
Q. Okay. And you've been represented by [counsel] for these proceedings?
A. Yes.
Q. Has she answered all of your questions?
A. Yes.
Q. Do you have any questions today of her about these proceedings?
A. No.
Q. Are you satisfied with the advice she has given to you?
A. Yes.
Q. Okay. And she already asked you if you're under any duress or coercion or is anybody threatening you to do this?
A. No.
Q. And you do so freely and voluntarily, the surrender.
A. Yes.
At the conclusion of questioning, counsel for defendant addressed the court, asking: "All of these proceedings, they're confidential[,] [c]orrect[?]" The court responded affirmatively and defendant's attorney stated, "So I can assure my client that this order remains confidential and [R.V.] won't be told about it[?]" When asked to further explain the concern over what would remain confidential from the child, counsel stated:
[Defense Counsel]: Justyou know, just any of the specifics.
....
[DAG]: You mean the facts of the case that were about to be presented?
[Defense Counsel]: Right.
[Law Guardian]: No, no. Of course not.
[DAG]: No. It's not appropriate for him to know.
[Law Guardian]: No. But he would ultimately learn of course that his mother has surrendered for his benefit and for him to be adopted by his caregivers.
[DAG]: And I think it will be [a] good thing for him to know that his mother did that for him.
[Defense Counsel]: Um hum. Okay. I just wanted to make sure it's going to stay confidential.
[Law Guardian]: Yeah, there's nonone of the details of these facts [] will be provided to him at all.
The Court: Okay. No, the filesthe courtroom is closed, the files are sealed, you know. That's just how these things work. Okay? I'm sure you're familiar with that also, but for your client's best knowledge.
[Defense Counsel]: Oh, I am. I am. But I wanted to assure her that it would remain confidential and that, you know, that anything was said here that [R.V.] won't, you know, [learn the specifics] other than the fact that she did surrender.
The Court: [W]e really didn't get into any facts of the case in any event today. But it is [a] confidential proceeding[ ].
*476 Resolving that query, the court entered these findings:
This is a proceeding concerning the general surrender of [R.V.]. His father, [R.J.V.], has already voluntarily surrendered his parental rights, and [defendant] has surrendered today. Under oath she testified with questions from her attorney indicating she understands the proceedings, she's waiving her rights to, her parental rights to the child. She understands there'll be no visitation. She has a right to three counseling sessions and she's waiving those rights. And [the] ... Division would not agree to an identified surrender, and that's why this is a general surrender. And the matter is resolved in this fashion.
Apparently knowing the case, all the attorneys feel that it is in the best interests of the child that the proceedings not go any further to trial and that the surrender take place. So the [c]ourt accepts that request and finds that there will be the general surrender today.
The March 30, 2009 judgment reflected defendant's voluntary surrender was accepted and placed the child in the guardianship of the Division.
Several months thereafter, defendant obtained new counsel and moved to vacate the judgment of guardianship. In her application, defendant asserted the surrender was not entered into knowingly, willingly, or voluntarily as "the premise behind the surrender" was that the Division had promised her file would be sealed and "certain unfavorable information about [her] would not be disclosed[.]" However, following the hearing, defendant learned the Division had revealed information regarding her relapses to her substance abuse program, leading to her discharge. Also, the information was related to defendant's probation officer. Because substance abuse treatment was a condition of her probation, an investigation was conducted as to whether she had violated its terms. Defendant asserts the false assurances of confidentiality induced her to enter the voluntary surrender; otherwise, she would have "taken her chances" at trial.
During the motion hearing, defendant was permitted to address the court and did so, stating:
[DEFENDANT]: I'd like to say, Your Honor, that I love my son very much and I miss him terribly. I want to fight to get custody back. I was forced to surrender my parental rights because I wanted to go to trial and fight for custody of my son. My lawyer informed me if I didn't surrender my parental rights DYFS would tell Bergen Regional, my intensive outpatient program, that I relapsed. Then I would have got discharged. Then when Bergen Regional would have told my probation officer that I relapsed, then I would have got violated [sic] on probation and then I would have went to jail, and my parental rights would have got terminated [sic] and I would be in jail. And so she said the only way that they won't find out about this is if I surrender, `cause then I would have no alternative. I'd be in jail and my parental rights would be terminated. Then she even said if I wanted to have another baby if your parental rights are terminated they'll take that baby too.
The Court: So ... you lied to the [c]ourt then.
[Defendant]: I was forced. Yes, I did.
The Court: You ... lied.
[Defendant]: I lied.
The Court: You committed perjury then.
[Defendant]: I did. I didn't want [to.]
....

*477 The Court: You ... made a sham out of a very respectable proceeding.
[Defendant]: I'm very sorry. She told me [to] sound convincing. But you can tell by m[y] voice I didn't want to do it.
....
[Defendant]: I was forced to do it.
DYFS argued the confidentiality concern expressed by defendant during the hearing centered only on the possible release of information to R.V. Further, the Division explained any disclosures with regard to defendant's persistent drinking, now challenged as violative of an alleged confidentiality agreement, occurred in preparation for trial, not after.
The court denied defendant's motion, finding no corroboration for the contention that her surrender of parental rights was in exchange for the Division's silence on her continued alcohol abuse. Defendant challenges the July 1, 2009 order in this appeal.
The scope of our review is limited. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998). "Trial court findings are ordinarily not disturbed unless `they are so wholly unsupportable as to result in a denial of justice[.]'" Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475, 541 A.2d 1063 (1988) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974)); Roe v. Roe, 253 N.J.Super. 418, 432, 601 A.2d 1201 (App.Div.1992). Reversal is required in those circumstances when the trial court's findings were "so wide of the mark that a mistake must have been made." Division of Youth & Family Servs. v. M.M., 189 N.J. 261, 279, 914 A.2d 1265 (2007) (internal quotations omitted).
In our review, we are obliged to accord deference to the trial judge's credibility determinations and the judge's "feel of the case" based upon the opportunity of the judge to see and hear the witnesses. Division of Youth & Family Servs. v. A.R.G., 361 N.J.Super. 46, 78, 824 A.2d 213 (App.Div.2003) (citing Cesare, supra, 154 N.J. at 411-12, 713 A.2d 390; Pascale v. Pascale, 113 N.J. 20, 33, 549 A.2d 782 (1988)), aff'd in part and modified in part, 179 N.J. 264, 845 A.2d 106 (2004). "When the credibility of witnesses is an important factor, the trial court's conclusions must be given great weight and must be accepted by the appellate court unless clearly lacking in reasonable support." Division of Youth & Family Servs. v. F.M., 375 N.J.Super. 235, 259, 867 A.2d 499 (App. Div.2005) (citing In re Guardianship of D.M.H., 161 N.J. 365, 382, 736 A.2d 1261 (1999)); see also Cesare, supra, 154 N.J. at 412, 713 A.2d 390 (holding that appellate courts defer to a trial court's assessment of a witness's testimony); Pascale, supra, 113 N.J. at 33, 549 A.2d 782 (same). Accordingly, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, "`its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal.'" Beck v. Beck, 86 N.J. 480, 496, 432 A.2d 63 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964)).
We examine the challenges presented by defendant. Citing Rule 4:50-1(a) (mistake, inadvertence, surprise or excusable neglect), (b) (newly discovered evidence), and (f) (other good cause), defendant maintains the judgment of guardianship must be set aside "because it was based on a false premise." She asserts
[j]ustice cannot be achieved, where a trial court advises a litigant that information *478 will remain confidential and her file will be sealed, the litigant relies upon this representation in deciding to consent to a judgment against her, and the state agency in possession of the information leaks it, to her detriment.
The Rule is applicable to consensual final judgments. DEG, L.L.C. v. Tp. of Fairfield, 198 N.J. 242, 261, 966 A.2d 1036 (2009). Generally, a motion for relief from judgment based upon the grounds specified in Rule 4:50-1 should be "granted sparingly." F.B. v. A.L.G., 176 N.J. 201, 207, 821 A.2d 1157 (2003) (citing Pressler, Current N.J. Court Rules, comment 1.1 on R. 4:50-1 (2003)). An applicant's right to relief examines the totality of the circumstances and "[t]he decision whether to vacate a judgment on one of the six specified grounds is a determination left to the sound discretion of the trial court, guided by principles of equity." Ibid. A "judgment will be left undisturbed `unless it represents a clear abuse of discretion.'" Ibid. (quoting Housing Auth. of Morristown v. Little, 135 N.J. 274, 283, 639 A.2d 286 (1994)).
The judgment under review uniquely affects the rights of the parent and also impacts the life of the child who is the object of the guardianship. Although the Supreme Court has affirmed that Rule 4:50-1 is the appropriate vehicle when seeking to vacate a judgment terminating parental rights, In re Guardianship of J.N.H., 172 N.J. 440, 474, 799 A.2d 518 (2002), the Court specifically noted that when vacating a judgment of guardianship "the future of a child is at stake." Therefore, to succeed in attacking the judgment, a moving parent must satisfy a two-part test.
First, a parent's motion "must be supported by evidence of changed circumstances" as the "moving party bears the burden of proving that events have occurred subsequent to the entry of a judgment to justify vacating the judgment." Id. at 473, 799 A.2d 518 (internal quotations omitted). A showing of those reasons articulated under Rule 4:50-1(a) to (f) satisfies this provision. However, this alone will not be sufficient to succeed as review must encompass a second condition: in a "termination case[,] the best interests of the child must be considered." Ibid.; see also Division of Youth & Family Servs. v. L.L., 201 N.J. 210, 228, 989 A.2d 829 (2010) (stating, in addition to proving changed circumstances, a parent must show clear and convincing evidence that vacating judgment of KLG is in child's best interest). This prong requires a weighing of the effects setting aside the judgment may have on the child's stability and permanency. J.N.H., supra, 172 N.J. at 474, 799 A.2d 518. Consequently, the "the primary issue is ... what effect the grant of the motion would have on the child." Id. at 475, 799 A.2d 518.
Although the proceeding under review did not involve a full guardianship trial, our examination of whether defendant's motion was properly denied is guided by the two-pronged examination articulated in J.N.H. Interestingly, defendant's arguments focus on the first prong, while DYFS hones in on the second.
The essence of defendant's challenge is that DYFS's disclosure of her break in sobriety breached a material condition of the surrender. Proper context requires a review of the statutory requisites governing a parent's voluntary surrender of parental rights.
Guardianship was granted pursuant to N.J.S.A. 30:4C-23. The statute permits a parent in a guardianship proceeding to consent to the surrender of parental rights, freeing the child for an adoption arranged by DYFS. N.J.S.A. 30:4C-20. *479 The statute provides a vehicle to effectuate a permanent plan for a child who has been removed from his or her home; however, the statute does not provide any additional framework to review a post-judgment request by the parent to vacate such a surrender.
New Jersey's statutes governing adoptions, N.J.S.A. 9:3-37 to -56, also address a parent's "surrender," defined as "a voluntary relinquishment of all parental rights by a birth parent, ... for purposes of allowing a child to be adopted." N.J.S.A. 9:3-38(j). Title 9 explicitly provides the manner in which a voluntary surrender to "an approved agency," followed by the child's adoption facilitated by that agency, shall be accomplished.
The agency shall inform the parent that (1) the surrender of parental rights "means the permanent end of the relationship and all contact between the parent and child"; (2) "the surrender shall constitute relinquishment of the person's parental rights in or guardianship or custody of the child ... and consent by the person to adoption of the child"; and (3) counseling is offered "prior to the execution of the surrender." N.J.S.A. 9:3-41(a). The Division, as part of the Department of Children and Families, is an approved agency. N.J.S.A. 9:3-38(a).
In order for a surrender pursuant to N.J.S.A. 9:3-41(a) to be enforceable, a parent must knowingly and voluntarily express his or her understanding that custody of his or her child is relinquished and their parental rights are terminated in favor of the agency, which will effectuate the child's adoption. A statutory surrender made under this provision "shall be valid and binding ... and shall be irrevocable except at the discretion of the approved agency taking such surrender or upon order or judgment of a court of competent jurisdiction setting aside such surrender upon proof of fraud, duress or misrepresentation by the approved agency." N.J.S.A. 9:3-41(a).
Based on the similarities between surrenders to an approved agency under Title 9 and those to the Division in lieu of proceeding to litigate a guardianship action, we discern no impediment to applying the requisites delineated in N.J.S.A. 9:3-41(a) to this proceeding governed by N.J.S.A. 30:4C-23. Accordingly, the safeguards of N.J.S.A. 9:3-41, as well as the standards set forth to set aside such a surrender, are applicable to the matter under review. We also conclude that DYFS's failure to comply with these protections could supply the necessary changed circumstances mandated by the first part of the J.N.H. test. J.N.H., supra, 172 N.J. at 473, 799 A.2d 518.
Defendant does not deny the Division fulfilled its obligation to adequately inform her during the surrender hearing that the surrender would result in a permanent severing of her parental relationship with R.V. and an absolute relinquishment of her parental rights. N.J.S.A. 9:3-41(a). She also does not dispute she was offered and declined pre-surrender counseling. Ibid.
Essentially, the circumstance defendant advances to vacate is a claimed "misrepresentation by the approved agency," ibid., that induced surrender. She argues because her probation officer and substance abuse counselor learned of her relapses, the Division failed to comply with a condition of the surrender. In responding to the Division's statement that any disclosures were made prior to trial, defendant suggests DYFS's failure to reveal these disclosureswhile advancing an agreement to comply with confidentialitywas egregious and induced her surrender. We reject this argument.
*480 DYFS did not hide that it was prepared for trial. Defendant's repeated alcoholic relapses and inability to abate that harm formed primary proofs of its complaint for guardianship. See N.J.S.A. 30:4C-15.1(a)(1) and (2). It was readily recognized that DYFS would communicate with defendant's substance abuse counselors and her probation officer to obtain the most updated information regarding these proofs prior to trial. Therefore, defendant had an opportunity to discover what information had been revealed to whom prior to voluntarily surrendering her rights.
At no time did defendant mention her concern for confidentiality extended beyond protecting R.V. from learning about the evidence gathered by the Division. Defendant's admirable concern to shield the child from "the facts of the case that were about to be presented" was the only basis expressed. Any contention that the Division accepted an unexpressed obligation not to disclose unfavorable information of her failed rehabilitation and continued substance abuse is wholly unsupported. Further, the subsequent motion hearing revelation that she actually engaged in an abhorrent trade-off of surrendering her child in exchange for the Division's secrecy of her unabated addiction is without merit.
Assuming, arguendo, defendant's surrender could have been made dependent on the Division's consent to withhold information regarding her faulty compliance with her treatment program and criminal probation, defendant bore the responsibility to negotiate such a condition. The alleged requirements of non-disclosure were never expressed and, therefore, could not be material to the agreed-upon result.
We determine defendant's assertion that the surrender must be set aside based on "fraud, duress or misrepresentation by the approved agency" is wanting. Consequently, defendant has failed to prove the requisite changed circumstances warranting the surrender be vacated. N.J.S.A. 9:3-41(a); J.N.H., supra, 172 N.J. at 473, 799 A.2d 518.
Defendant next suggests procedural due process safeguards "were treated casually rather than scrupulously followed in the instant case" justifying the judgment be set aside pursuant to Rule 4:50-1(f). This claim is meritless. R. 2:11-3(e)(1)(E).
Relief from the judgment under subsection (f) requires a showing of exceptional circumstances that demonstrate redress is necessary, Baumann v. Marinaro, 95 N.J. 380, 393, 471 A.2d 395 (1984); Manning Eng'g, Inc. v. Hudson County Park Comm'n, 74 N.J. 113, 122, 376 A.2d 1194 (1977), and that enforcement of the order or judgment would be unjust, oppressive or inequitable. J.N.H., supra, 172 N.J. at 473-74, 799 A.2d 518. Defendant offers no facts establishing the current circumstances warrant relief from the judgment terminating parental rights. Such facts could include proof of her rehabilitation from substance abuse, her employment, the child's continued attachment, or R.V.'s failure to thrive in his foster home. Id. at 475, 799 A.2d 518.
We find no procedural flaws in the surrender proceeding and conclude the court, in accepting defendant's surrender, complied with all necessary due process. Defendant was afforded numerous opportunities to express any pressures, concerns or duress. Instead, defendant repeatedly stated she had ample time to consult with her attorney, understood her attorney's advice, waived her right to trial, was aware of the effect of surrendering her parental rights, declined counseling, and asserted her actions were voluntary. Defendant was also given the opportunity to ask questions *481 of the court, DYFS, and the Law Guardian. She had every chance to express any important concern or issue that was unclear. Accordingly, the trial judge's conclusion that defendant's surrender was knowingly and voluntarily made is supported by the credible evidence in the record.
Defendant also asserts the court's questioning during the motion hearing was "inquisitorial, bullying, intimidating and adversarial," forcing her "into committing perjury" in violation of her Fifth Amendment right against self-incrimination. We determine these contentions are also meritless, adding only these brief comments. R. 2:11-3(e)(1)(E).
Defendant, represented by newly chosen counsel, insisted on addressing the court even though the judge was disinclined to accept testimony. She then made voluntary disclosures that she lied while testifying during the surrender hearing. These facts do not implicate a violation of the privilege against self-incrimination. Attor v. Attor, 384 N.J.Super. 154, 165, 894 A.2d 83 (App.Div.2006); see also State v. Kobrin Sec., Inc., 213 N.J.Super. 161, 169, 516 A.2d 1130 (App.Div.1986) (stating "[t]he privilege against self-incrimination may be waived by a party in a civil action who voluntarily testifies in the action upon the merits") (internal citations and quotation omitted), rev'd on other grounds, 111 N.J. 307, 544 A.2d 833 (1988). Moreover, a trial court does not have an obligation to warn a witness that his or her testimony may be self-incriminating: that obligation rests with defendant's counsel. All Modes Transp., Inc. v. Hecksteden, 389 N.J.Super. 462, 470, 913 A.2d 814 (App. Div.2006).
The trial court properly conducted the proceeding at which defendant voluntarily surrendered her parental rights, and we discern no abuse of discretion in denying defendant's motion to set aside the resultant judgment.
Based on out conclusions, we need not examine any resultant effect upon the child by setting aside the judgment. L.L., supra, 201 N.J. at 226, 989 A.2d 829; J.N.H., supra, 172 N.J. at 474, 799 A.2d 518. Consequently, we conclude the motion to vacate the order and the related judgment of guardianship was properly denied.
Affirmed.