# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3225-17T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.V.,

     Defendant-Appellant,

and

S.H.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF Mi.V. and Ma.V.,

     Minors.

_____

Submitted October 17, 2018 – Decided November 7, 2018

Before Judges Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0054-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Clara S. Licata, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Hannah F. Edman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith A. Pollock, Deputy Public Defender, on the brief).

PER CURIAM

Defendant J.V.[1] appeals from a March 13, 2018 order denying his Rule 4:50-1 motion to vacate the voluntary surrender of his parental rights to his children, Ma.V. (Matt) and Mi.V. (Mike). We affirm.

Defendant and S.H.[2] are the biological parents of Mike and Matt. Based on concerns that S.H. was unable to care for Mike, he was removed by the Division of Child Protection and Permanency (Division). Because defendant was incarcerated when Mike was removed, and there was a history of domestic

---

[1] We use initials in this opinion to protect the parties' privacy. R. 1:38-3(d)(12).

[2] S.H. made a voluntary surrender of her parental rights and is not a party to this appeal.

violence between the parents, Mike was placed with resource parents. One year later, Matt was born. Based on the same concerns that led to the Division's removal of Mike, Matt was removed and placed with the same resource parents as his older brother.

Over the course of the next two years, the Division provided services to defendant for a planned reunification with Mike and Matt. A psychological and parenting evaluation found defendant had a third grade reading level, chronic difficulty coping with life stressors, and a limited ability to understand a child's physical and emotional needs. Defendant was diagnosed with a learning disability and antisocial personality disorder. Defendant failed to complete the services offered through the Division. As a result, the Division's plan changed to termination of defendant's parental rights, followed by adoption.

Prior to the scheduled trial, defendant, who was represented by assigned counsel, entered into a voluntary surrender of his parental rights. On November 14, 2017, defendant was questioned, under oath, by his counsel and the judge regarding the surrender of his parental rights. Defendant testified his decision to surrender his parental rights was voluntary, and no one forced, coerced or threatened him. Defendant also told the judge he was not suffering from any disability that impaired his ability to understand his actions or the legal

proceeding. He also acknowledged the surrender of his rights would be final and he could not change his mind.

The judge found defendant was "alert" and "comprehend[ed] everything that's been discussed." The judge stated defendant "certainly understands all of the consequences and ramifications of effectuating this identified surrender." Therefore, the judge accepted defendant's surrender of his parental rights.

In addition to answering questions under oath, defendant also signed and initialed each page of the Voluntary Surrender of Parental Rights Form. In the signed surrender form, defendant indicated he made the decision to surrender his rights "voluntarily and of [his] own free will." Defendant also denied being under the influence of any substances that could affect his ability to make a clear decision regarding the surrender. Similarly, defendant checked the box indicating he was not suffering "from any mental or physical disability which could affect [his] judgment." Defendant acknowledged his surrender would be final if his children were adopted by the resource parents and he could not change his mind. By signing the form, defendant also accepted his surrender was in the best interest of his children.

Two months after entry of the voluntary surrender, defendant filed a motion to vacate the surrender pursuant to Rule 4:50-1. In his motion, defendant

claimed he felt pressured by his assigned counsel to relinquish his parental rights.

On March 13, 2018, the judge, who was the same judge who presided during the hearing on defendant's surrender of his parental rights, conducted a hearing on defendant's motion to vacate his voluntary surrender. The judge heard testimony from defendant, as well as counsel assigned to represent defendant at the guardianship trial and surrender proceeding.

Defendant's assigned trial counsel testified he reviewed the Division's evidence with defendant, explained the extensive nature of the domestic violence charges against defendant would be used as evidence at trial, and discussed the potential outcome of a trial based upon the evidence. Counsel testified the discussions regarding the surrender of defendant's parental rights took place before the start of the trial, and the matter was discussed "for more than [an] hour." In response to questions regarding the potential outcome if the matter proceeded to trial, defendant's assigned trial attorney testified he advised defendant "that the case was not a very strong case for [defendant] but it was his decision to go to trial or to surrender and at that point he decided to do a voluntary surrender."

Defendant testified his attorney counseled him to surrender his parental rights at their very first meeting, and again at every subsequent meeting. Defendant claimed his assigned trial attorney "took out a big stack of papers" and explained the papers were "all about you and . . . your wife, with your domestic violence and your history." At that point, defendant believed his attorney was "not on [his] side." Defendant further testified he attempted to contact his assigned counsel the day after the surrender proceeding to vacate his voluntary surrender. Defendant also claimed the Acknowledgement of Appeal Rights form was confusing because that document gave him twenty-one days to appeal the termination of his parental rights.[3]

After considering the testimony on defendant's motion to vacate the surrender, the judge ruled there was no "testimony or any other document in evidence that would suggest that there was some sort of mistake or inadvertent surprise or excusable neglect, no newly discovered evidence or anything of that nature and really no other reason to justify relief from the final judgment." The judge found defendant's assigned trial counsel testified credibly and "gave

---

[3] Defendant claims he suffers from a cognitive deficit that precluded his ability to understand the finality of his surrender. However, there was no competent evidence presented to the family court judge regarding defendant's cognitive issues. Nor was any evaluation of defendant's cognitive limitations included in defendant's appellate appendix.

A-3225-17T1

[defendant] information that he thought would be pertinent to [defendant's] decision making," including the finality of the proceeding upon defendant's signing of the voluntary surrender.

On the other hand, the judge found defendant "came across a little differently" during the evidentiary hearing on the motion to vacate the surrender. The judge stated,

> there's something about [defendant] . . . that appeared very calculating, maybe even manipulative, opportunistic, perhaps even there was some measure of malingering about what he understands and doesn't understand, his body language, facial expressions, his general demeanor, almost feigning this sort of unawareness of what was going on. None of that convinces the court that [defendant] is somehow unware of what's happening or doesn't fully understand what occurred.

Because the motion judge was the same judge who presided over defendant's surrender of his parental rights, the judge expressed, "there was nothing about [defendant's] answers, the way he answered questions or anything that suggested he didn't understand anything." The judge found defendant's "testimony [during the motion hearing] leaves a lot to be desired by way of credibility." The judge held defendant was not pressured into executing the surrender, and denied the motion to vacate.

A-3225-17T1

On appeal, defendant contends the judge abused his discretion in denying the motion to vacate the surrender of his parental rights because the surrender was based on mistake and other grounds, justifying relief from the judgment.

Our scope of review is limited. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Reversal is required in those circumstances when the trial court's findings were "so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citations omitted). Specifically, a trial court's decision to grant or deny a motion under Rule 4:50-1 "will be left undisturbed unless it represents a clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994) (citations omitted).

The Supreme Court has approved the use of Rule 4:50-1 as a means to vacate a judgment terminating parental rights. In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002). In J.N.H., the Court adopted a two-part test for reviewing a motion to vacate a judgment resulting in the termination of parental rights. First, the application "must be supported by evidence of changed circumstances as the moving party bears the burden of proving that events have occurred subsequent to the entry of a judgment to justify vacating the judgment." N.J.

Div. of Youth & Family Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010) (citations omitted); see also J.N.H., 172 N.J. at 473. Second, in a "termination case[,] the best interests of the child must be considered." T.G., 414 N.J. Super. at 435 (citations omitted); see also N.J. Div. of Youth & Family Servs v. L.L., 201 N.J. 210, 228 (2010). The trial court must consider the child's best interest because setting aside such a judgment may affect the child's stability and permanency. See J.N.H., 172 N.J. at 474-75.

In T.G., applying the two-prong test for Rule 4:50-1 applications to vacate a voluntary surrender of parental rights, we held:

> In order for a surrender . . . to be enforceable, a parent must knowingly and voluntarily express his or her understanding that custody of his or her child is relinquished and their parental rights are terminated in favor of the agency, which will effectuate the child's adoption. A statutory surrender made under this provision "shall be valid and binding . . . and shall be irrevocable except at the discretion of the approved agency taking such surrender or upon order or judgment of a court of competent jurisdiction setting aside such surrender upon proof of fraud, duress or misrepresentation by the approved agency."
>
> [T.G., 414 N.J. Super. at 436 (citations omitted.]

Defendant in this case, like the defendant in T.G., was afforded due process during the surrender proceeding. Defendant was given the opportunity, both in writing and while under oath, to express any pressures, concerns, or

duress in connection with the surrender of his parental rights. Defendant stated he had sufficient time to speak with his assigned counsel, understood his counsel's advice, waived his right to a trial, comprehended the effect of surrendering his parental rights, declined counseling, affirmed his actions were voluntary, and repeated he was not suffering from any impairment that would affect his ability to understand the proceeding.

In this case, we accord significant deference to the judge's credibility determinations because he presided at both the hearing on defendant's voluntary surrender and the evidentiary hearing on defendant's motion to vacate the surrender. On this record, we are satisfied defendant failed to demonstrate mistake or changed circumstances to vacate his voluntary surrender under the first-prong of the J.N.H. analysis, and the judge did not abuse his discretion in denying the motion to vacate the surrender.[4]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Defendant did not present any argument under the second prong of the J.N.H. analysis, thus failing to demonstrate it would be in the best interests of his children to vacate the surrender. A motion to vacate a voluntary surrender of parental rights requires the moving party satisfy both prongs of J.N.H., including why it would be in the best interests of the child to vacate the judgment. J.N.H., 172 N.J. at 474-75 (weighing the effects of setting aside a judgment on the child's stability and permanency).