# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3689-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.J.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.J.,
a minor.

_____

Submitted March 16, 2021 – Decided April 22, 2021

Before Judges Fisher, Gilson, and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0038-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven Edward Miklosey, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Meaghan Goulding, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David B. Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

The trial judge heard testimony during a four-day trial in the Division of Child Protection and Permanency's action for guardianship of D.J. (Danny) against his mother, defendant M.J. (Mandy), and his father, J.C.[1] On the last day of trial, the judge began delivering her oral decision. After comprehensively setting forth her findings of facts and the pertinent law, the judge concluded the Division had met its burden to prove each of the four prongs set out in N.J.S.A. 30:4C-15.1(a),[2] and "the best interest[s] of the child demand[ed] the termination

---

[1] The pseudonyms were used by defendant in her merits brief. We copy them and use initials to protect Danny's and the litigants' privacy interests. See R. 1:38-3(d)(12).

[2] Under N.J.S.A. 30:4C-15.1(a),

The [D]ivision shall initiate a petition to terminate parental rights on the grounds of the "best interests of

of parental rights of both [Mandy and J.C.] and transfer of guardianship to the Division . . . so that [Danny] may be free[d] for adoption."

The judge then related the evidence she found that supported her conclusion that the Division had met the first two prongs. She had started her findings as to the third prong when defendant's counsel interrupted and, at sidebar, informed the judge defendant "want[ed] to ask the [c]ourt if she could

---

the child" pursuant to [N.J.S.A. 30:4C-15(c)] if the following standards are met:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

3

offer a surrender[.]" Defendant and her counsel retired to a conference room to review the Voluntary Surrender of Parental Rights Form;[3] the judge said she would recess until they had completed their review and then would finish rendering her oral decision. Defendant made clear she did not want to hear the balance of the judge's decision.

After the recess, the judge confirmed Mandy: reviewed, initialed and signed the Form; recognized the importance of her decision; waived the rights to which she was entitled; and was surrendering her parental rights knowingly and voluntarily, having had ample time to review her rights with counsel. Mandy also confirmed the identified surrender was in Danny's best interests. The judge entered the order that day, January 10, 2020.[4]

Danny remained in the care of resource parents, his paternal aunt and uncle, under the terms of the identified surrender. He had been living with them since September 2017.

---

[3] Though this form was admitted into evidence, as the Division notes in its merits brief, it is not included in Mandy's appendix and "the Division's efforts to obtain [the Form] directly from the [trial] court have been unsuccessful."

[4] The judge completed her decision and entered an order that day terminating J.C.'s rights and awarding guardianship to the Division. J.C. has not appealed from that order.

A few months later, Mandy moved to vacate the identified surrender alleging Danny's resource parents did not allow her post-surrender contact with her son. She appeals from the judge's May 8, 2020 order denying the motion following a hearing arguing:

POINT I

THE TRIAL COURT'S DENIAL OF MANDY'S MOTION TO VACATE THE IDENTIFIED SURRENDER MUST BE REVERSED PURSUANT TO [RULE] 4:50-1(f), WHEREAS EXPERT [TRIAL] TESTIMONY PROFFERED BY BOTH MANDY AND [THE DIVISION] CLEARLY STATED THAT A CONTINUED RELATIONSHIP BETWEEN MANDY AND [DANNY] WAS IN [DANNY'S] BEST INTEREST[S].

We recognize a decision denying a motion to vacate an order—even a consensual one—lies within the trial judge's sound discretion, and we will not disturb the order absent a clear abuse of that discretion. N.J. Div. of Youth & Fam. Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010). Under our limited scope of review, we will not disturb a trial judge's findings if they are "supported by adequate, substantial, credible evidence" in the record, Cesare v. Cesare, 154 N.J. 394, 412 (1998); see also T.G., 414 N.J. Super. at 432-33, and are not "so wholly insupportable as to result in a denial of justice," Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974); see also T.G.,

414 N.J. Super. at 432-33. Under that lens, and deferring to the trial judge's "special expertise in matters related to the family," N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012), we conclude the record evidence supports the trial judge's denial and affirm.

Mandy moved to vacate the surrender under Rule 4:50-1(f), which allows relief from a final judgment or order for any "reason justifying relief from the operation of the judgment or order." Because such a motion involves "the future of a child," our Supreme Court adopted a two-prong test a moving parent must satisfy for relief to be granted. T.G., 414 N.J. Super. at 434 (quoting In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002)). The movant must show both "evidence of changed circumstances" and establish that vacating the judgment would be in the child's "best interests." Id. at 434-35 (quoting J.N.H., 172 N.J. at 471, 473).

Mandy does not contend her surrender was not knowing and voluntary or that the surrender is unenforceable because of "fraud, duress or misrepresentation." See N.J.S.A. 9:3-41(a); T.G., 414 N.J. Super. at 436. She argues the judge erred in holding she did not satisfy either of the required prongs.

In deciding the motion, the judge recalled the evidence adduced at the trial over which she presided and observed the proceedings had been "ongoing since

6

September of 2017[,]" during which Danny—for almost three years—was in the Division's custody. She also reviewed with defendant a question on the Voluntary Surrender Form, asking if defendant understood the trial court could not enforce promises to allow her visitation with Danny, which defendant answered affirmatively; defendant confirmed her understanding to the judge on the record. The judge then echoed defendant's acknowledgment that the motion to vacate was not premised upon promised visitation, but upon a claim that there was "a change of circumstances at an issue of the best interest[s] of the child[.]"

The judge found Mandy had not shown changed circumstances because "[t]he circumstances [were] the same, that the [c]ourt could not enforce any promises made by the [resource] parents for [Mandy] to see [Danny]. That was the case at the time of the surrender; that [was] still the case at [that] time." The judge also found Mandy had not established that vacating the surrender was in Danny's best interests as he had been "thriving" in the resource parents' care for almost three years, and it was in Danny's best interests for the resource parents' planned adoption to go forward. The judge determined if the surrender was vacated, the "additional delays, significant delays" were "unnecessary and clearly not in [the] child's best interest[s]."

A-3689-19

In her merits brief, Mandy reiterates her motion "is not a matter of an unenforceable promise to continue visitation, but a clear and exceptional concern that Danny's [resource] parents were not acting in his best interest[s]" by precluding contact with Mandy. In support of her premise, she points to testimony given by experts at trial: The Division's expert in forensic psychology, Dr. Brian Eig, and her expert in clinical and forensic psychology, Dr. Gerard Figurelli.

Dr. Eig found Mandy exhibited Cannabis-use Disorder, unspecified Bipolar Disorder, Generalized Anxiety Disorder, and antisocial personality traits such as "the persistent involvement in behaviors that are grounds for arrest, irresponsibility, impulsivity, [and] aggressiveness sometimes," and lacked the parenting skills to independently care for Danny. He nevertheless found a "positive and strong relationship" existed between Danny and his mother, although he could not definitively conclude whether Danny's attachment to her was secure. Mandy's counsel asked Dr. Eig on cross-examination if, "given that the child is eight [years old] and has a good, positive, [and] strong relationship" with Mandy, "wouldn't that continued contact [with his mother] be in [Danny's] best interest[s]?" The doctor responded: "I think it would, I haven't given it a lot of thought[,] but I think it would."

Dr. Figurelli found Mandy experienced "clinically, significant symptoms of depression, anxiety, and struggl[ed] with stability of mood." He understood she had not been taking her prescribed medications and was not "in a position to be able to parent in a consistently safe and stable manner, until she participated in and benefitted from the services that she needed." Dr. Figurelli, nevertheless, found a "significant" attachment existed between mother and son based on his observations during their bonding evaluation. The doctor noted his concerns about the potentially unpleasant relationship between Mandy and Danny's resource parents and opined it would be important for Danny to continue to have contact with defendant as long as the contact was "appropriate."

Mandy argues the doctors' testimony "confirmed that continued contact between Danny and Mandy was in Danny's best interest[s][,]" and that "[t]he denial of that contact constitutes a truly exceptional circumstance that is detrimental to Danny's best interest[s]."

Mandy's arguments do not really address—much less establish—that there were changed circumstances. As the trial judge observed, Danny has been in the care of his resource parents, who are blood relatives, for years. Mandy's concession that her motion was not based upon a "promise to continue

visitation" merely admits the trial court's determination that she fully recognized at the time of surrender that any promise of future visitation was unenforceable.

Moreover, there are other circumstances that have not changed and also demonstrate that granting the motion to vacate was not in Danny's best interests. Mandy's use of Dr. Figurelli's parsed testimony does not fully disclose the doctor's caveat to her continued contact with Danny. On cross-examination, he explained the "appropriate contact" that would be in Danny's best interests was conditioned on Mandy addressing both her mental health and substance abuse issues. He explicated "appropriate contact" would require that "she's no longer engaging in any substance abuse[,] [t]hat she is addressing her mental health issues, and that there are evidences of stability in her life."

Not only has Mandy failed to demonstrate a change of circumstances—that she has addressed either of those issues and demonstrated stability—her failure to address those issues belies her assertion that her contact with Danny would be in his best interests. As we reasoned in T.G.:

> Relief from the judgment under subsection (f) requires a showing of exceptional circumstances that demonstrate redress is necessary, and that enforcement of the order or judgment would be unjust, oppressive or inequitable. [The] [d]efendant offers no facts establishing the current circumstances warrant relief from the judgment terminating parental rights. Such facts could include proof of her rehabilitation from

10

A-3689-19

substance abuse, her employment, the child's continued attachment, or [the child's] failure to thrive in his foster home.

[414 N.J. Super. at 438 (citations omitted).]

Likewise, Mandy has not established those exceptional circumstances.

Furthermore, close scrutiny of Dr. Eig's testimony reveals the portion selected by Mandy to buttress her argument was not the doctor's final opinion after he stated on cross-examination, admittedly without "a lot of thought," that continued contact with Mandy would be in Danny's best interests. The trial judge specifically inquired if the doctor's recommendation that Danny should remain in the resource parents' care—an alternative permanency plan that did not include parental reunification—would change if continued contact between Danny and Mandy ceased. The doctor replied:

> It is something that I certainly consider and think about. In this case, I don't—in this case, if the resource parents told me, and they didn't, if they told me that if there was termination of parental rights and they adopted [Danny], that they would not allow contact with [Mandy], that wouldn't change my opinion, in this case.

Upon further questioning by the judge, the doctor admitted "[i]n this case, to be honest, [he was] really not sure how much [continued contact] would help or hinder[,]" so he wasn't sure if his opinion would change. The full content and

11

context of Dr. Eig's testimony does not provide an adequate bulwark for Mandy's motion.

We perceive no error in the trial judge's application of her found facts to the dual J.N.H. prongs. Mandy established neither changed circumstances nor that granting the motion to vacate the identified surrender would be in Danny's best interests. Inasmuch as vacating a judgment or order under any Rule 4:50-1 subsection should be done "sparingly," J.N.H., 172 N.J. at 474, and a movant who relies solely on subsection (f) must show that "truly exceptional circumstances are present," Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994); Baumann v. Marinaro, 95 N.J. 380, 395 (1984), Mandy failed to "demonstrate [that] redress is necessary . . . and that enforcement of the order or judgment would be unjust, oppressive or inequitable," see T.G., 414 N.J. Super. at 438 (citations omitted).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION