# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4266-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.F., a/k/a R.H.,

     Defendant-Appellant,

and,

I.W.,
     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
J.L.R.W., P.A.W., and
P.M.W., minors.

_____

Submitted October 18, 2021 – Decided November 3, 2021

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0038-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Christine Olexa Saginor, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor J.L.R.W. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Rachel E. Seidman, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant R.F. (Rae)[1] appeals from a March 28, 2019 Family Part guardianship judgment terminating her parental rights to her daughter, J.L.R.W. (June), who was born in 2012.[2] Rae also appeals a June 29, 2020 order denying

---

[1] We employ initials and pseudonyms for the parties and children because records relating to Division of Child Protection and Permanency proceedings conducted in accordance with Rule 5:12 are exempt from public access under Rule 1:38-3(d)(12).

[2] The guardianship order also terminated Rae's parental rights to her twin son and daughter, P.A.W. and P.M.W., but Rae does not appeal from that part of the order. The guardianship order further terminated defendant I.W.'s parental rights. I.W. is the father of June, P.A.W. and P.M.W. He did not appeal from the guardianship order and did not participate in this appeal.

her Rule 4:50-1(b) and (f) motion to vacate the guardianship order based on newly discovered evidence and denying her request for updated psychological and bonding evaluations. We are convinced the court correctly determined the New Jersey Division of Child Protection and Permanency (Division) proved by clear and convincing evidence that termination of defendant's parental rights is in June's best interests, and that the court did not abuse its discretion by denying R.F.'s Rule 4:50-1 motion. We therefore affirm.

Rae and I.W. are June's biological parents. In September 2016, the court granted the Division temporary care and custody of June because Rae violated a Division safety plan, she did not have stable housing, and she had a substance abuse and domestic violence history. Sixteen months later, in December 2017, the court accepted the Division's permanency plan for termination of Rae's parental rights to June followed by adoption. In February 2018, the Division filed a guardianship complaint. At a March 14, 2019 permanency hearing, the court again adopted the Division's plan of termination of Rae's parental rights to June followed by adoption.[3]

---

[3] The February 2018 and March 2019 permanency plans also provided for the termination of Rae's parental rights to P.A.W. and P.M.W. followed by adoption.

3

The five-day trial on the Division's complaint was conducted in February and March 2019 before Judge Wayne J. Forrest. Rae and June's Law Guardian opposed the Division's request for termination of Rae's parental rights to June. The Division presented the testimony of Division adoption caseworkers Emily Walsh-Slack and Christine Idland, Division permanency caseworker Quanika Pate, and licensed psychologist Dr. David Brandwein, Psy.D. Rae testified on her own behalf and presented licensed psychologist Dr. Gerard A. Figurelli. June's Law Guardian did not present any witnesses.

Following the trial, Judge Forrest issued a detailed 125-page written decision summarizing the matter's procedural history and including detailed factual findings as to each of the required elements of the best-interests-of-the-child standard set forth in N.J.S.A. 30:4C-15.1(a). Based on those findings, Judge Forrest concluded the Division sustained its burden of proving by clear and convincing evidence it is in June's best interests to terminate Rae's parental rights. Rae appealed from the guardianship order.

Subsequent to the filing of her appeal, we granted Rae's motion for a limited remand for the Family Part to consider new evidence or for the filing of a Rule 4:50-1 motion to vacate the guardianship judgment. Rae's motion seeking the remand was founded on the claim that June's placement had changed

4

following the guardianship judgment, and the change in placement required new bonding evaluations and reconsideration of the court's determination under the fourth prong of the statutory best-interests-of-the-child standard, as set forth in N.J.S.A. 30:4C-15.1(a)(4).

On remand, Rae moved for relief from the guardianship judgment under Rule 4:50-1. The Division and June's Law Guardian opposed the motion. They argued the change in June's placement did not require or permit vacation of the guardianship judgment. After hearing argument, Judge Forrest denied the motion, finding the change in June's placement "had no import . . . [or] significance" to the findings supporting the guardianship judgment because his determination under the fourth prong of the best-interests standard was not dependent on June's placement with her then resource parent.

Rae filed an amended notice of appeal, challenging the guardianship judgment and the court's order denying her Rule 4:50-1 motion. She presents the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN CONCLUDING THAT [RAE] ENDANGERED HER CHILD.

POINT II

THE TRIAL COURT ERRED IN CONCLUDING
[RAE] IS NOT ABLE OR WILLING TO
REMEDIATE HER ALLEGED PARENTING
ISSUES.

POINT III

THE TRIAL COURT'S LEGAL CONCLUSION
THAT [THE DIVISION] SATISFIED ITS LEGAL
OBLIGATION TO ASSIST [RAE'S] FAMILY WITH
REUNIFICATION UNDER PRONG THREE WAS
ERRONEOUS BECAUSE THE RECORD DOES NOT
CONTAIN EVIDENCE THAT [RAE] WAS
PROVIDED WITH SERVICES REASONABLY
CALCULATED TO PRODUCE REUNIFICATION.

POINT IV

THE TRIAL COURT ERRED IN CONCLUDING
THAT TERMINATION OF [RAE'S] PARENTAL
RIGHTS IS IN THE CHILD'S BEST INTEREST
BECAUSE THE TRIAL COURT GAVE UNDUE
WEIGHT TO THE OPINION OF [THE DIVISION'S]
EXPERT, AND THAT OPINION WAS BASED ON
BIASED, INCOMPLETE, AND OUTDATED
INFORMATION.

POINT V

THE TRIAL COURT'S ERRONEOUS DENIAL OF
[RAE'S] MOTION FOR CONSIDERATION OF NEW
EVIDENCE AND FOR A BONDING EVALUATION
RESULTED IN AN INCOMPLETE RECORD
REGARDING THE TRIAL COURT'S PRONG FOUR
DETERMINATION BELOW, THEREBY
RENDERING THE FURTHER ENFORCEMENT OF

6

THE TRIAL COURT'S MARCH 28, 2019[] DECISION TO TERMINATE [RAE'S] PARENTAL RIGHTS UNJUST. AS SUCH, THE TRIAL COURT'S JUNE 29, 2020[] DECISION SHOULD ALSO BE REVERSED.

"Our review of a trial court order terminating parental rights is limited." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). "A Family Part's decision to terminate parental rights will not be disturbed when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Child Prot. & Permanency v. K.T.D., 439 N.J. Super. 363, 368 (App. Div. 2015) (citing N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012)). "We accord deference to fact[-]findings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." F.M., 211 N.J. at 448. This enhanced deference is particularly appropriate where the court's findings are founded upon the credibility of the witnesses' testimony. N.J. Div. of Youth & Fam. Servs. v. H.B., 375 N.J. Super. 148, 172 (App. Div. 2005) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to

A-4266-19

ensure that there is not a denial of justice." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting G.L., 191 N.J. at 605). No deference is given to the trial court's "interpretation of the law," which we review de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

A parent has a constitutionally protected right "to enjoy a relationship with his or her child." In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). That right, however, "is not absolute" and is limited "by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447. A parent's interest must, at times, yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009).

When terminating parental rights, the court must consider the "best interests of the child." K.H.O., 161 N.J. at 347. A petition to terminate parental rights may only be granted if the following four prongs enumerated in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence:

> (1)  The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2)  The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to

provide a safe and stable home for the child and the delay of permanent placement will add to the harm.[4]

(3)    The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4)    Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a)(1)-(4).]

"The four criteria enumerated in the best[-]interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348.  "[T]he cornerstone of the inquiry [under N.J.S.A. 30:4C-15.1(a)] is not whether the biological parents are fit but whether they can cease causing their child harm." In re Guardianship of J.C., 129 N.J. 1, 10 (1992).

---

[4] When the guardianship complaint was filed and this matter was tried, N.J.S.A. 30:4C-15.1(a)(2) also provided that "[s]uch harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child[.]"  This language was deleted from the statute effective July 2, 2021.  L. 2021, c. 154, §§ 9, 10.  It is unnecessary that we address the amendment to the statute because the guardianship judgment is not based on a finding June would suffer harm based on a separation from the resource parent with whom she resided at the time of trial.

A-4266-19

Here, Rae challenges the court's findings under each of the prongs of the best-interests standard. She claims there is insufficient evidence supporting the court's findings on each prong. Based on our careful review of the record, we are not persuaded. We agree with the Division and June's Law Guardian that Judge Forrest made painstaking and thorough findings of fact that are supported by clear and convincing evidence he deemed credible, and that he conducted the required fact-sensitive analysis of all the statutory factors. See K.H.O., 161 N.J. at 348. Based on our review of the voluminous record, we affirm the guardianship judgement substantially for the reasons set forth in his cogent and well-reasoned opinion. We add only the following comments.

Judge Forrest's finding the Division clearly and convincingly established June's "safety, health[,] or development have been and will continue to be endangered by a parental relationship" with Rae is supported by clear and convincing evidence. See N.J.S.A. 30:4C-15.1(a)(1). The court detailed the facts supporting the following bases for its determination: Rae's unresolved mental health and anger management issues; her failure to maintain stable housing or employment; June's exposure to domestic violence and risk of future exposure to domestic violence based on Rae's consistent and ongoing association with I.W., who has repeatedly victimized Rae with acts of domestic

violence; Rae's refusal to acknowledge the reasons for June's significant behavioral and mental health issues; Rae's failure to participate in and complete offered services; and the delay in permanency resulting from Rae's lengthy and ongoing inability to provide June with a safe and secure home. See generally K.H.O., 161 N.J. at 348-49 (explaining delays in permanent placement add to the harm to a child).

The court's finding Rae is unwilling or unable to eliminate the harm facing June and to provide June a safe and secure home, see N.J.S.A. 30:4C-15.1(a)(2), is similarly supported by substantial credible evidence, see K.H.O., 161 N.J. 348-49 (explaining the primary inquiry under the second prong of the best-interests standard is whether it is reasonably foreseeable the parent will cease harming the child and "is able to continue a parental relationship without recurrent harm to the child"). Again, Judge Forrest made detailed findings supporting his determination the Division satisfied prong two of the best-interests standard, noting that during the two-and-a-half years following June's removal, Rae failed to: consistently comply and complete the numerous services offered to address her substance abuse, mental health, domestic violence, employment, and housing issues; extricate herself from her abusive relationship with I.W.; and obtain and maintain a stable and secure home for June.

A-4266-19

Judge Forrest also noted Dr. Brandwein's expert testimony that Rae is currently unable to meet her own needs and June's needs, including June's need for the permanency of a safe and secure home, and Rae will be unable to meet those needs in the foreseeable future.[5]  See N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014) (quoting K.H.O., 161 N.J. at 348-49) (explaining prong two of the best-interests standard is satisfied where the "parent is unable to provide a safe and secure home and that the delay in securing permanency continues or adds to the child's harm"); see also N.J. Div. of Child Prot. & Permanency v. T.D. (In re M.G.), 454 N.J. Super. 353, 380 (App. Div. 2018) (noting assessment of prong two of the best-interests standard permits consideration of "whether the parents would correct their conduct within the reasonably foreseeable future").

Judge Forrest's finding the Division provided Rae with numerous and ongoing services to ameliorate the varied issues that rendered Rae unable to safely parent June is also supported by substantial credible evidence.  See F.M., 211 N.J. at 452 (2012) (explaining the third prong of the best-interests standard

---

[5] Judge Forrest also noted Rae's expert, Dr. Figurelli testified it would be unfair to place Rae's children's needs on hold "forever" in anticipation of her compliance with services.  Dr. Figurelli further agreed that at the time of trial Rae was not able to care for the children or provide a safe and secure home, but he opined she might be capable three months after trial if she completed services.

"requires an evaluation of whether [the Division] 'made reasonable efforts to provide services to help the parent' remedy the circumstances that led to removal of the children from the home" (citation omitted)).

Rae's claim the Division failed to provide reasonable services to address her mental health issues is belied by the evidence. Indeed, as detailed in Judge Forrest's opinion, the Division offered various services to address Rae's mental health issues and Rae had "a history or non-compliance and not benefitting from [those] services."[6] The reasonableness of the Division's services is "not measured by their success," In re Guardianship of D.M.H., 161 N.J. 365, 393 (1999), and Rae's failure to consistently attend and complete the services does not render unreasonable the services offered under N.J.S.A. 30:4C-15.1(a)(3), N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 119 (App. Div.

---

[6] Rae primarily claims the Division did not provide reasonable services because it failed to provide prompt financial assistance to permit to obtain a medication (Zoloft) that was prescribed on September 18, 2018, when she was diagnosed with depression. She claims she told the Division case worker she could not afford the medication, but it was not until November 2018, when she was approved for Medicaid benefits, that she was able to purchase and begin taking the medication. We are not persuaded by Rae's claim because there is no evidence the short delay in her obtaining the medication affected her ability to otherwise participate in the numerous services offered, and the court's findings the Division provided numerous reasonable services, and Rae consistently failed to participate in or complete them, is otherwise clearly and convincingly supported by the record evidence.

2004). Thus, the court correctly determined the Division satisfied its burden under prong three of the best-interests standard.

Judge Forrest's conclusion termination of Rae's parental rights to June will not do more harm than good is similarly supported by substantial credible evidence. See N.J.S.A. 30:4C-15.1(a)(4). The court found "there is no realistic likelihood that" Rae "will be able to safely and appropriately care for" June "now or in the foreseeable future." The court cited Dr. Brandwein's testimony that June had a bond with Rae, and June would suffer "some short[-]term psychological harm" if Rae's parental rights are terminated. Dr. Brandwein, however, explained June would suffer further harm if Rae was provided additional time to complete services because it would provide June with a "false hope" of reunification with Rae.

Judge Forrest found "there was no optimal option for [June's] permanency," but he accepted Dr. Brandwein's testimony that "keeping [June] in a hopeful state that she will be reunified with [Rae] will cause further harm," and "terminating [Rae's] parental rights will be the least harmful option" to provide June with an opportunity for permanency. See K.H.O., 161 N.J. at 357 (noting under the fourth prong of the best-interests standard that "the child's need for permanency and stability emerges as a central factor"); C.S., 367 N.J.

14

Super. at 111 (explaining in termination of parental rights cases the "emphasis has shifted from protracted efforts for reunification . . . to an expeditious, permanent placement to promote the child's well-being").

There is substantial credible evidence establishing Rae's longstanding inability to provide June with a safe and secure home, as well as her inability to do so in the foreseeable future. That evidence supports Judge Forrest's finding termination of parental rights will not do more harm than good. June need not "languish indefinitely in foster care while [her] birth [mother] attempts to correct the conditions that resulted in an out-of-home placement." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018) (quoting N.J. Div. of Youth & Fam. Servs. v. S.F., 392 N.J. Super. 201, 210 (App. Div. 2007)). A child's needs for permanency and a parent's inability to care for a child in the foreseeable future support a finding that termination of parental rights will not do more harm than good. N.J. Div. of Youth & Fam. Servs. v. B.G.S., 291 N.J. Super. 582, 593 (App. Div. 1996). That is precisely what Judge Forrest found here.

In sum, and as noted, we are convinced substantial credible evidence supports Judge Forrest's findings of fact and conclusions of law as to each of the prongs of the best-interests standard. We therefore discern no basis in the

15

record, or in any of Rae's arguments, to reverse the guardianship judgment. See K.T.D., 439 N.J. Super. at 368.

We next consider Rae's appeal from the court's order denying her Rule 4:50-1 motion to vacate the judgment, order new bonding evaluations, and consider anew its determination under prong four of the best-interests standard. As noted, the motion was filed in the Family Part following our grant of Rae's request for a temporary remand.

Rae's motion was based on the change in June's placement following the guardianship judgment. Prior to the judgment, June had been placed with Rae's friend, M.C., who vacillated in her commitment to adopt June. In his written opinion supporting the termination of Rae's parental rights, Judge Forrest noted M.C. indicated she would adopt June "should it become necessary."

Following the guardianship trial, however, M.C. requested June's removal from her care due to June's behavioral issues. June was then placed with a treatment home provider who is willing to adopt her. Rae moved under Rule 4:50-1(b), claiming the change in placement constituted new evidence requiring relief from the guardianship judgment, and under Rule 4:50-1(f), claiming the change in placement justified relief from the judgment. Rae did not seek "to terminate the . . . judgment." Rae sought only "a bonding evaluation

16

of . . . [June] with her current caretakers" to determine if the "new information would or could alter the judgment" terminating her parental rights.

After considering the motion papers and hearing argument, Judge Forrest denied the motion. In an opinion from the bench, he explained the new evidence – the change in June's placement – would not alter the judgment terminating Rae's parental rights because June's placement with M.C. at the time of the trial "had no import, had no significance" on his decision. Judge Forrest noted that June had been placed with M.C. for a very short time – about three months – prior to the guardianship trial, and M.C. vacillated on whether she would adopt June. Judge Forrest therefore found that a change in that placement following the judgment "unequivocal[ly] . . . would not alter [his] judgment."

The judge also rejected Rae's request for a bonding evaluation between June and her new caretakers. Judge Forrest noted June's Law Guardian's opposition to the request. The judge further explained June had been in her placement for "approximately a year," the caretakers are committed to adoption, and June expressed to her Law Guardian that she wished to be adopted by them. The court found that further delays would be harmful to June and denied the request for the bonding evaluation.

17

Rule 4:50-1 motions "should be 'granted sparingly.'" State Div. of Youth & Fam. Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010) (quoting F.B. v. A.L.G., 176 N.J. 201, 207 (2003)). In a termination of parental rights case, a moving party must not only demonstrate an entitlement to relief under Rule 4:50-1, he or she must also demonstrate that relief from the judgment is in the best interests of the child. Id. at 435. In a court's consideration of a Rule 4:50-1 motion, "the need to achieve equity and justice always is balanced against the state's legitimate interest in the finality of judgments. Where the future of a child is at stake, there is an additional weight in the balance: the notion that stability and permanency for the child are paramount." A.B. v. S.E.W., 175 N.J. 588, 594 (2003) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 474-75 (2002)).

"It is within the trial court's sound discretion, guided by equitable principles, to decide whether relief should be granted pursuant to Rule 4:50-1 [and] [t]hat decision 'will be left undisturbed unless it represents a clear abuse of discretion.'" J.N.H., 172 N.J. at 473 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). A court abuses its "discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" US Bank Nat. Ass'n v.

Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88 (2007)).

Rae sought relief from the guardianship judgment under Rule 4:50-1(b) based on newly discovered evidence – the change in June's placement. Under Rule 4:50-1(b), a party seeking relief from judgment based on newly discovered evidence must meet a three-element test; they "must demonstrate" (1) "evidence would probably have changed the result," (2) "that it was unobtainable by the exercise of due diligence for use at the trial, and" (3) "that the evidence was not merely cumulative." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 264 (2009) (quoting Quick Chek Food Stores v. Twp. of Springfield, 83 N.J. 438, 445 (1980)).

Rae also moved under Rule 4:50-1(f), which permits relief from judgment for reasons – other than those set forth in subsections (a) through (e) – that "justify[] relief from operation of the judgment or order." To obtain relief under Rule 4:50-1(f), it must be shown there are "exceptional circumstances that demonstrate redress is necessary, and that enforcement of the order or judgment would be unjust, oppressive or inequitable." T.G., 414 N.J. Super. at 438 (citations omitted).

We find no basis to conclude the court abused its discretion by denying Rae's motion for relief from the guardianship judgment based on the change in June's placement. The court's findings on the fourth prong of the best-interests standard were not dependent on June's placement with M.C. Judge Forrest found termination of parental rights would not do more harm than good because of the delay in permanency caused by Rae's longstanding inability to provide June with a safe and secure home, and the credible evidence Rae would not be able to safely parent June for the foreseeable future. See B.G.S., 291 N.J. Super. at 593.

June's change in placement did not constitute evidence that would probably have changed the result of the guardianship trial, thereby supporting relief under Rule 4:50-1(b). DEG, LLC, 198 N.J. at 264. As Judge Forrest found, the evidence had no effect on the reasoning supporting his decision to terminate Rae's parental rights. Additionally, Rae made no showing the change in placement constituted exceptional circumstances rendering the enforcement of the judgment unjust, oppressive or inequitable under Rule 4:50-1(f), T.G., 414 N.J. Super. at 438, or that vacating the order is in June's best interests, J.N.H., 172 N.J. at 474.

Rae therefore failed to sustain her burden for relief under Rule 4:50-1(b) and (f). See T.G., 414 N.J. Super. at 434. We therefore find the court did not

20

abuse its discretion by denying Rae's motion for relief from the judgment to permit bonding evaluations and a later reconsideration of the court's decision to terminate her parental rights.

Any arguments made on Rae's behalf that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4266-19