# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3628-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

J.F.,

    Defendant-Appellant,

and

G.S.,

    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF J.F., a minor.

_____

        Submitted May 4, 2017 — Decided June 14, 2017

        Before Judges Lihotz and Mawla.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Burlington
        County, Docket No. FG-03-34-15.

        Kenneth Rosellini, attorney for appellant.

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa Dutton-Schaffer, Assistant Attorney General, of counsel; Jennifer A. Lochel, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant J.F. (Judith) appeals from a March 17, 2016 Family Part order denying her application to vacate an identified surrender of parental rights of her daughter J.F. (Jane)[1] to allow defendant's aunt to adopt Jane. Judith asserts she was coerced into the identified surrender upon a threat Jane would be placed in a non-relative foster home. Judith also claims her constitutional rights were not explained to her before she executed the surrender. We affirm.

The following facts are taken from the record. Judith is the biological mother of Jane. Jane suffers from several medical conditions and developmental delays. A few months after Jane's birth, the Division of Child Protection and Permanency (Division) filed a complaint for care, custody and supervision of Jane, which the trial court granted. The Division alleged the relationship between Judith and Jane's biological father G.S. (Gary) was fraught

---

[1] We use pseudonyms to protect the parties' privacy and for ease of reference.

with severe domestic violence and neither parent was able to care for Jane because Judith suffered from bi-polar disorder and Gary from substance abuse. Services provided by the Division to aid the family were unsuccessful.

After nearly two years of litigation, the Division filed a guardianship complaint on January 22, 2015. The guardianship trial was scheduled for September 9, 2015. On the day of trial, Judith spent substantial time conferring with her counsel, then completed the voluntary surrender of parental rights form and confirmed her understanding of it in sworn testimony. The trial judge concluded Judith's answers during the voir dire demonstrated she understood her rights and the trial process; specifically, it would be the Division's burden, not Judith's, to prove a termination of parental rights. Judith confirmed she understood the consequences of the surrender and had not been forced or coerced into making it, but had entered the decision with the advice of counsel. The trial judge made her findings accepting the identified surrender.

Then, the following colloquy occurred between the judge and Judith:

> JUDGE: [Judith], good luck to you in the future. I hope everything works out for you. Thank you very much. I relieve Mr. Gladden as attorney for [Judith]. Thank you.
>
> . . . .

A-3628-15T2

[JUDITH]: I just wish things would have been different.

THE COURT: I wish things had been different, too, for you, ma'am.

[JUDITH]: And I wish that I could have had the opportunity to like, you know, to take care of [Jane] and people watch. Like I said, I know it would be hard for you because you don't know me, but if they went ahead like nurses to watch, you know, while I take care of her, I think that would have helped a lot, but I didn't get that opportunity and that's what I feel more sad about, but I know that what I'm doing now because I probably, with the psychological, you really don't have any choice but to terminate me.

MR. GLADDEN: Well --

THE COURT: No, ma'am. That's not true, that I'm sure Mr. Gladden has explained this to you before, is that I listen to everything, okay? And I make the determination on the entire case and everything that I hear. I do not allow and never have allowed an expert to tell me what to do, okay? They give me their opinion and I take their opinion into consideration along with everything else that I hear in the courtroom, everything, including everything you say, okay? And I make my determination based on all of this, the history of what's happened, the physical needs of your child, your abilities, the child's father's ability, everything, okay? But I do not base my decision on what the doctors say. We have doctors come in and sometimes they say -- all say the same thing, sometimes they say different things, one says one thing, somebody says something different. It's part of what I consider, but they do not and I never have allowed them to make my decision for me.

[JUDITH]: Well, you sound like a fair judge.

4

THE COURT: I try to be. Yes, ma'am.

[JUDITH]: It's just that I, I'm just too scared that, you know, if you find to terminate, I'm just afraid what would happen to [Jane].

THE COURT: Okay.

[JUDITH]: And I don't want that to happen to her.

THE COURT: When you make this decision, ma'am, you should take into consideration everything, okay, including what you think is the best interest of your daughter. Have you done that, taken into consideration everything?

[JUDITH]: I have, yeah. I mean we talked about everything. I mean, all the stuff that I have, you know, it's just hard to fight it, you know what I mean, and he gave me his opinion and, you know, and a lot of people have given the same opinion that I probably would have lost so, you know.

[COURT]: Okay. That's their opinion but you should never think that because somebody thinks that or that there's that possibility that's what's going to happen, okay? I want you to know that, you know, every time the Division brings a guardianship doesn't necessarily mean, just because they bring this kind of case, that I'm going to agree with them. I don't always agree with them.

[JUDITH]: No, I know that.

THE COURT: Okay? Sometimes, I disagree with them and they're unhappy.

[JUDITH]: Actually, I want to thank you, actually the one time when they were taking her, you were the one that kept her with my

5

sister instead of putting her somewhere else so, yeah, I know you don't.

THE COURT: I do, I mean, you know, I think, you know, my job is to protect the child and be fair to everybody. You need to be doing this, if you think this is the best for your daughter. Is that what had [sic] you think?

[JUDITH]: I do, yeah. I think it's the best for her because I'm not a risk taker, you know.

THE COURT: Okay.

[JUDITH]: and I don't want to play with her life, you know, and if I lose I won't see her for two years and I don't want to play with her life. I don't want [the Division] to come in, she doesn't talk and I don't want them to come in and give her to another family.

THE COURT: Okay.

[JUDITH]: So . . .

THE COURT: Well, and you understand that if for some reason your sister or her husband cannot adopt your daughter, that you will be brought right back into the case, okay?

[JUDITH]: I do.

THE COURT: All right. You'll be brought right back, you'll be notified right away and you'll be brought right back into the case, okay?

[JUDITH]: Okay.

THE COURT: All right. Well, good luck to you, ma'am.

[JUDITH]: Thank you again. Like I said, if I was going to have any chance I was glad that it was going to be with you. I think I would have had a chance, you know, if I would have had anything but like I said, I'm too afraid.

You know, there's a lot of overwhelming evidence and I'm just afraid of the risk to [Jane].

THE COURT: Ma'am, that's a decision you have to make and like you, sometimes people do -- I've had other parents who had done the same thing and said I'd rather know that my daughter's going to be with the person that she or he is with right now than take that chance. And so that does happen and I understand that, ma'am.

[JUDITH]: But I would have loved to have had the opportunity, though, to have been able to take care of her just to show so that, you know, like I said, I know like in your position, you know, I would say if I was a judge it would be hard because you don't know me, you know, so you wouldn't know what I could do, but then I would have, you know, said, well, let's see, we'll put somebody in her house and we'll see how things, you know, would go and [Jane] wouldn't be in any danger because if I went to feed her then, you know, I would have been -- you know what I mean? They would have said, well, you're doing good or you're not, just like when I vented her, they wrote down I did a good job, you know, so I would have been putting her at risk and yet everyone would have felt comfortable and because, like I said, I do fully understand that, you know, you've made decisions and I know mothers have done stuff so it's very, you know, you want to make sure you're doing the right thing and you want to make sure the child's protected and I would too. I wouldn't, I wouldn't just leave a child, say, okay, mom, you know, you can take her.

THE COURT: Yeah.

[JUDITH]: You know what I mean? I would want to see and make sure you did okay before I backed out.

7

THE COURT: Well, I can't tell you what I would have done and we can't guess at what I would have done at some time in the past and I certainly can't tell you what I would have done at the end of this trial because I don't know because I haven't heard the evidence, okay? If you have a seat, ma'am, out in the hallway, we're going to bring you all the forms and the orders, okay?

[JUDITH]: Thank you.

MR. GLADDEN: Thank you, Judge.

THE COURT: Thank you. Good luck again, ma'am. Thank you, Mr. Gladden.

Over two months later, Judith filed a motion to vacate the identified surrender alleging the surrender was neither voluntary nor knowing. The trial judge denied the application finding no evidence of coercion or duress and no evidence vacating the surrender would serve Jane's best interests.

The scope of our review is limited. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). "Trial court findings are ordinarily not disturbed unless 'they are so wholly unsupportable as to result in a denial of justice[.]'" Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). Reversal is required in those circumstances when the trial court's findings were "so wide of the mark that a mistake

must have been made." <u>Div. of Youth & Family Servs. v. M.M.</u>, 189 <u>N.J.</u> 261, 279 (2007) (quotations omitted).

> A motion under [<u>Rule</u>] 4:50-1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining whether relief should be granted or denied. The decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion.
>
> [<u>Housing Authority of Town of Morristown v. Little</u>, 135 <u>N.J.</u> 274, 283 (1994) (citations omitted).]

On appeal, Judith asserts the trial judge erred by failing to grant her motion to vacate the surrender pursuant to <u>Rule</u> 4:50-1(a), (c) and (f). She asserts she satisfied the requisites of <u>Rule</u> 4:50-1 because the facts demonstrate coercion, duress and exceptional circumstances warranting a reversal. Specifically, she argues her identified surrender was the product of duress by the Division because it threatened to place Jane with a non-relative foster family. Judith also asserts her identified surrender was "unconstitutional" because it was not made "knowingly and intelligently." She argues "there was no judicial finding that she was, clearly and convincingly apprised of her rights as a parent so as to constitute a knowing and intelligent waiver of those rights." Judith claims when she "expressed her concern to the trial court at the [i]dentified [s]urrender hearing that [the Division] would improperly place her child with a

stranger foster family, because court intervention was previously required to stop the Division from doing just that, the [t]rial [c]ourt failed to apprise [Judith] of her rights."

Judith also urges reversal because there were no findings or allegations of abuse or neglect. Therefore, she asserts the Division lacked "jurisdiction to pursue the termination of parental rights at the time of the surrender."

Rule 4:50-1 states:

> [T]he court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), mis-representation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

Relief may be granted under "subsection (f) only where such reason is not one included among those specified in subsections (a), (b) and (c) and there is also a showing of extreme hardship and the equities clearly run in favor of the party applying for relief

A-3628-15T2

from judgment." Doyle v. Chase Manhattan Bank, 80 N.J. Super. 105, 125 (App. Div. 1963).

The Supreme Court has sanctioned the use of Rule 4:50-1 as a means to vacate a judgment terminating parental rights. In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002). The Court adopted a two part test, namely, a parent's motion "must be supported by evidence of changed circumstances as the moving party bears the burden of proving that events have occurred subsequent to the entry of a judgment to justify vacating the judgment." Div. of Youth & Family Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010) (quotations omitted); see also J.N.H., supra, 172 N.J. at 473. Secondly, in a "termination case[,] the best interests of the child must be considered." T.G., supra, 414 N.J. Super. at 435 (alteration in original); see also Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 228 (2010). The trial court must consider the child's best interest when asked to set aside the judgment because it may affect the child's stability and permanency. Thus, "the primary issue is . . . what effect the grant of the motion would have on the child." J.N.H., supra, 142 N.J. at 475.

In T.G., we applied the J.N.H. two prong test to Rule 4:50-1 applications to vacate a voluntary surrender of parental rights. We stated:

In order for a surrender pursuant to N.J.S.A. 9:3-41(a) to be enforceable, a parent must knowingly and voluntarily express his or her understanding that custody of his or her child is relinquished and their parental rights are terminated in favor of the agency, which will effectuate the child's adoption. A statutory surrender made under this provision "shall be valid and binding . . . and shall be irrevocable except at the discretion of the approved agency taking such surrender or upon order or judgment of a court of competent jurisdiction setting aside such surrender upon proof of fraud, duress or misrepresentation by the approved agency." N.J.S.A. 9:3-41(a). Based on the similarities between surrenders to an approved agency under Title 9 and those to the Division in lieu of proceeding to litigate a guardianship action, we discern no impediment to applying the requisites delineated in N.J.S.A. 9:3-41(a) to this proceeding governed by N.J.S.A. 30:4C-23. Accordingly, the safeguards of N.J.S.A. 9:3-41, as well as the standards set forth to set aside such a surrender, are applicable to the matter under review. We also conclude that DYFS's failure to comply with these protections could supply the necessary changed circumstances mandated by the first part of the J.N.H. test. J.N.H., supra, 172 N.J. at 473.

[T.G., supra, 414 N.J. Super. at 436.]

Similar to here, the mother in T.G. made a voluntary surrender of her parental rights on the first day of the guardianship trial. Id. at 429. She then sought to vacate the surrender under Rule 4:50-1, arguing the Division had not fulfilled a condition of the surrender, namely, not to reveal any details about her file. Id. at 431. After the surrender, the Division disclosed the mother's

alcohol relapse and subsequent discharge from a substance abuse program to her probation officer. <u>Ibid.</u> The mother argued confidentiality was specifically bargained for in return for her surrender, and the Division's failure to uphold its obligations was grounds to vacate the surrender under <u>Rule</u> 4:50-1 (a), (b) and (f). <u>Ibid.</u>

We affirmed the trial court's denial of the mother's application, finding she made no such agreement with the Division. <u>Id.</u> at 437. More importantly, regarding her claims of coercion and duress, we found she made a knowing and voluntary surrender of her parental rights. <u>Id.</u> at 438. Specifically, we stated:

> We find no procedural flaws in the surrender proceeding and conclude the court, in accepting defendant's surrender, complied with all necessary due process. Defendant was afforded numerous opportunities to express any pressures, concerns or duress. Instead, defendant repeatedly stated she had ample time to consult with her attorney, understood her attorney's advice, waived her right to trial, was aware of the effect of surrendering her parental rights, declined counseling, and asserted her actions were voluntary. Defendant was also given the opportunity to ask questions of the court, DYFS, and the Law Guardian. She had every chance to express any important concern or issue that was unclear.
>
> [<u>Id.</u> at 438-39.]

Here, Judith's arguments mirror the mother's in <u>T.G.</u> and are similarly dispelled by the record. Like <u>T.G.</u>, there is no evidence in the record of the Division threatening to place Jane with a

13

non-relative foster family. The evidence points to the contrary as Jane had been residing in her relative placement throughout the litigation.

Judith argues "there was no judicial finding that she was, clearly and convincingly apprised of her rights as a parent so as to constitute a knowing and intelligent waiver of those rights." Again, the record demonstrates the opposite. The trial judge made specific findings after Judith's voir dire:

> THE COURT: All right. I've listened to the testimony of [Judith]. I find that she has entered into the identified surrender of her child [Jane] freely and voluntarily, that she has done so knowingly having had the advice of counsel and had ample opportunity to speak to him today and previously about this surrender.
>
> I further find that she has testified she is not under the influence of any substance which affects her ability to understand what she is doing and those medications that she has taken today do not affect her understanding of what she is doing. Therefore, I will accept her surrender, enter an order to that effect.

Lastly, Judith argues before the Division can institute guardianship proceedings, there must first be a finding of abuse or neglect. This argument misreads Title 30.

The Division may commence a guardianship litigation at any juncture and a finding of abuse or neglect is not a condition precedent to its ability to file a guardianship proceeding. N.J.S.A. 30:4C-15 grants the Division exclusive authority whether

14

to file a guardianship under Title 30. See N.J. Div. & Servs. v. A.P., 408 N.J. Super. 252, 262-63 (App. Div. 2009), certif. denied, 201 N.J. 153 (2010). In New Jersey Division of Youth and Family Services v. K.M., 136 N.J. 546, 556 (1994), the Supreme Court stated: "termination proceedings, which are brought pursuant to N.J.S.A. 30:4C-15, do not require a prior determination of abuse or neglect." Therefore, we reject Judith's claims relating to the Division's alleged "lack of jurisdiction" as having no basis law.

There is no basis to revisit the trial judge's decision under Rule 4:50-1(a), (c) or (f). As the trial judge noted, Judith's "claims [of coercion and duress by the Division] are vague and unsubstantiated." As noted above, Judith's claims regarding the lack of jurisdiction are likewise without merit. Thus, the first prong of J.N.H. has not been met.

As to the second prong of J.N.H., Judith has not demonstrated vacating the judgment is in Jane's best interests. Her brief is silent on the subject beyond the claims we have addressed. And the trial judge noted Judith provided her with no information to conclude it was in Jane's best interests to vacate the judgment. The trial judge said:

> [Jane has] lived with her maternal aunt her entire life. No one disputes that the aunt has provided excellent care for [Jane]. It would be highly disruptive to this child's life to remove her from the only home she has

known.  [Jane] has been stable in this home for two years.

We have no basis to disagree with the trial judge's reasoning.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION